UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
───────────────────────────────────────

DENINE K. KOCHANEK,

**REPORT AND
RECOMMENDATION**

            Plaintiff,

08-CV-310
(GLS/VEB)

      V.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

            Defendant.

───────────────────────────────────────

## I. INTRODUCTION

In February of 2000, Plaintiff Denine Kochanek filed an application for Supplemental

Security Income ("SSI") benefits under the Social Security Act.  At that time, Plaintiff

claimed disability based on Hodgkin's Lymphoma.  In a determination dated April 24, 2000,

Plaintiff was found to be disabled and granted benefits.  In July of 2003, a state agency

reviewer determined that Plaintiff was no longer disabled as of July 1, 2003, because her

cancer went into remission.  The Commissioner of Social Security upheld the decision and

Plaintiff's benefits were ended effective July 1, 2003.

Plaintiff, through her attorneys, Olinsky, Shurtliff Law Firm, Jaya Shurtliff, Esq., of

counsel, commenced this action on March 17, 2008, by filing a Complaint in the United

States District Court for the Northern District of New York. (Docket No. 1).  Plaintiff seeks

judicial review of the Commissioner's decision pursuant to 42 U.S.C. §§ 405 (g) and 1383

(c)(3).

On February 8, 2010, the Honorable Norman A. Mordue, Chief United States District

Judge, referred this case to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket No. 16).

## II. BACKGROUND

The relevant procedural history may be summarized as follows:  Plaintiff initially applied for SSI on February 3, 2000, alleging disability beginning on June 4, 1999. (T at 89).[1]  The primary disabling impairment was Hodgkin's Lymphoma.  The application was granted. (T at 16).   On July 23, 2003, it was determined that Plaintiff was no longer disabled as of July 1, 2003.  (T at 16, 37). Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ").  (T at 16, 63).   A hearing was held in Syracuse, New York on April 10, 2007, before ALJ Robert E. Gale.  (T at 588-666).  Plaintiff, represented by counsel, appeared and testified.  (T at 713-748).  On April 27, 2007,  ALJ Gale issued a decision finding that Plaintiff's disability ended as of July 1, 2003.  (T at 16-22).  Plaintiff filed a request for review of that decision.  The ALJ's decision became the Commissioner's final decision on January 28, 2008, when the Appeals Council denied Plaintiff's request. (T at 8-11).

Plaintiff, through counsel, timely commenced this action on March 17, 2008. (Docket No. 1).  The Commissioner interposed an Answer on June 13, 2008.  (Docket No. 8). Plaintiff filed a supporting Brief on August 27, 2008. (Docket No. 11).  The Commissioner filed a Brief in opposition on November 13, 2008. (Docket No. 15).

Pursuant to General Order No. 18, issued by the Chief District Judge of the Northern

---

[1]Citations to "T" refer to the Administrative Transcript.  (Docket No. 7).

District of New York on September 12, 2003, this Court will proceed as if both parties had accompanied their briefs with a motion for judgment on the pleadings.[2]

For the reasons that follow, it is respectfully recommended that the Commissioner's motion be denied, Plaintiff's motion be granted, and that this case be remanded for further proceedings.

### III. DISCUSSION

#### A. Legal Standard

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir.1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir.1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir.1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir.1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the

---

[2]General Order No. 18 provides, in pertinent part, that "[t]he Magistrate Judge will treat the proceeding as if both parties had accompanied their briefs with a motion for judgment on the pleadings."

Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir.1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams ex rel. Williams v. Bowen, 859 F.2d 255, 258 (2d Cir.1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F.Supp. 147, 153 (S.D.N.Y.1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir.1984).

The Commissioner has established the following seven (7) step process to determine whether an individual's disability has continued or ended:

> (i) Step 1. Do you have an impairment or combination of impairments which meets or equals the severity of an impairment listed in appendix 1 of subpart P of part 404 of this chapter? ....
>
> (ii) Step 2. If you do not, has there been medical improvement as defined in paragraph (b)(1)(i) of this

section?[3]

(iii) Step 3. If there has been medical improvement, we must determine whether it is related to your ability to do work ...; i.e., whether or not there has been an increase in the residual functional capacity based on the impairment(s) that was present at the time of the most recent favorable medical determination....

(iv) Step 4. If we found at step 2 ... that there has been no medical improvement or if we found at step 3 ... that the medical improvement is not related to your ability to work, we consider whether any of the exceptions in paragraphs (b)(3) and (b) (4) of this section apply.....

(v) Step 5. If medical improvement is shown to be related to your ability to do work or if one of the first group of exceptions to medical improvement applies, we will determine whether all your current impairments in combination are severe (see § 416.921)....

(vi) Step 6. If your impairment(s) is severe, we will assess your current ability to do substantial gainful activity in accordance with § 416.960....

(vii) Step 7. If you are not able to do work you have done in the past, we will consider one final step. Given the residual functional capacity assessment and considering your age, education, and past work experience, can you do other work? If you can, disability will be found to have ended. If you cannot, disability will be found to continue.

20 C.F.R. § 416.994(b)(5)(i)-(vii).

**B.    Analysis**

   **1.    Commissioner's Decision**

   In his decision, the ALJ found that the most recent favorable medical decision

---

[3]Medical improvement is any decrease in the medical severity of your impairment(s) which was present at the time of the most recent favorable medical decision that you were disabled or continued to be disabled." 20 C.F.R. § 416.994(b)(1)(i).

finding that Plaintiff was disabled was a determination dated April 24, 2000, and that this was the "comparison point decision" ("CPD"). (T at 17).  At the time of the CPD, Plaintiff had active Hodgkin's Disease.  (T at 18).  At the time of the hearing on this appeal, the ALJ determined the medical evidence established as of July 1, 2003, that Plaintiff had the following impairments considered "severe" under the Act: obesity and insulin-dependent diabetes mellitus. (T at 18).

However, the ALJ concluded that as of July 1, 2003, Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments found in 20 CFR Part 404, Subpart P, Appendix 1 (the "Listings"). (T at 19). The ALJ found that medical improvement occurred as of July 1, 2003, after Plaintiff sustained remission with respect to her Hodgkin's Lymphoma.  (T at 19).

The ALJ found that as of July 1, 2003, Plaintiff has the residual functional capacity ("RFC") to lift/carry and/or push/pull 10 pounds at least occasionally, sit 6 hours in an 8 hour work day (at least 2-3 hours at a time), and stand/walk 2 hours in a workday, with no ladders, ropes, or crawling, and occasional stooping, kneeling, and crouching; "environmentally, avoidance of concentrated exposure to temperature extremes and avoidance of moderate exposure to high humidity and fumes, dusts, odors, and gases"; and mentally, still is able to understand, remember, and perform simple jobs under supervsion and independently, to make simple work-related decisions, and to attend to a schedule and respond appropriately to supervision, co-workers and work situations. (T at 19-20).

The ALJ noted that Plaintiff was capable of performing her past relevant work as a child care worker and as a clerical worker.  (T at 22).  As such, the ALJ found that

6

Plaintiff has not been under a disability since July 1, 2003. (T at 22).  As noted above, the ALJ's decision became the Commissioner's final decision on January 28, 2008, when the Appeals Council denied Plaintiff's request for review.  (T at 8-11).

**2.   Plaintiff's Claims**

Plaintiff contends that the Commissioner's decision should be reversed.  She offers four (4) principal arguments in support of that position.  First, she argues that the ALJ erred by finding that her chronic obstructive pulmonary disease ("COPD"), reactive airway disease, heart impairments, and depression were not severe.  Second, Plaintiff contends that the ALJ did not properly apply the "treating physician's rule."  Third, Plaintiff asserts that the ALJ's residual functional capacity determination was not supported by substantial evidence.  Fourth, Plaintiff argues that the ALJ erred by finding that she was capable of performing her past relevant work as a child care worker and clerical worker.

**a.   Severity of Impairments**

At step two of the sequential evaluation process, the ALJ must determine whether the claimant has a severe impairment that significantly limits his or her physical or mental ability to do basic work activities. See 20 C.F.R. §§ 404.1520(c), 416.920(c). The following are examples of "basic work activities": "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling ... seeing, hearing, and speaking ... [u]nderstanding, carrying out, and remembering simple instructions ... [u]se of judgment ... [r]esponding appropriately to supervision, co-workers and usual work situations." Gibbs v. Astrue, No. 07-Civ-10563, 2008 WL 2627714, at *16 (S.D.N.Y. July 2, 2008); 20 C.F.R. § 404.1521(b)(l)-(5).

The claimant bears the burden of presenting evidence establishing severity. Miller v. Comm'r of Social Sec., No. 05-CV-1371, 2008 WL 2783418, at *6-7 (N.D.N.Y. July 16, 2008); see also 20 C.F.R. § 404.1512(a). Although the Second Circuit has held that this step is limited to "screen[ing] out de minimis claims," Dixon v. Shalala, 54 F.3d 1019, 1030 (2d Cir.1995), the "mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment" is not, by itself, sufficient to render a condition "severe." Coleman v. Shalala, 895 F.Supp. 50, 53 (S.D.N.Y.1995). Indeed, a "finding of 'not severe' should be made if the medical evidence establishes only a 'slight abnormality' which would have 'no more than a minimal effect on an individual's ability to work.'" Rosario v. Apfel, No. 97-CV-5759, 1999 WL 294727 at *5 (E.D.N.Y. March 19,1999) (quoting Bowen v. Yuckert, 482 U.S. 137, 154 n. 12 (1987)).

In this case, the ALJ found that, as of July 1, 2003, Plaintiff had the following medically determinable impairments: obesity and insulin-dependent diabetes mellitus. (T at 18). The ALJ further found that these impairments were "severe" within the meaning of the Act. However, the ALJ determined that Plaintiff's other medical "issues," e.g., COPD, headaches, sleep apnea, borderline cardiomegaly, very mild bilateral hearing loss, hypercholesterolemia, depression, and status-post laparoscopic appendectomy were not severe impairments.

For the following reasons, this Court is not persuaded that the ALJ applied the correct legal standard or that he considered all of the pertinent evidence.

### i.    COPD/Breathing Impairments

With regard to Plaintiff's breathing difficulties, the ALJ noted that Plaintiff was hospitalized in May of 2002, but that her symptoms "resolved quite readily on

8

administration of Combivent for asthma." (T at 18).  The ALJ also referenced pulmonary function studies showing only mild restrictive effects. (T at 18).  However, the medical records indicate multiple hospitalizations with COPD exacerbations. (T at 485, 488, 490, 653, 683).  Dr. Picone, Plaintiff's treating physician, indicated that Plaintiff experienced "frequent" shortness of breath. (T at 609, 687).

While the ALJ cited the May 2002 hospital visit, he does not reference the other hospitalizations, including a note from Dr. Picone in July of 2003 (the time of the cessation determination), which indicated that Plaintiff "was recently admitted to the hospital for COPD exacerbation." (T at 493).  Indeed, the ALJ notes that Plaintiff denied shortness of breath during the July 2003 visit to Dr. Picone, citing this fact in support of his non-severe finding (T at 18), while seemingly disregarding the reference to a recent hospitalization for COPD symptoms.  Certainly, a condition that required multiple hospitalizations and resulted in frequent shortness of breath would be likely to have more than a minimal effect on an individual's ability to work.  Even if the ALJ is correct that Plaintiff's symptoms "resolved quite readily" upon receiving treatment in a hospital and appropriate medication, he erred by failing to consider whether the fact that hospitalization was required on multiple occasions is, itself, strong evidence that Plaintiff's breathing difficulties are more than a de minimus impairment.  See Antonetti v. Barnhart, 399 F.Supp.2d 199, 203 (W.D.N.Y.2005) (noting that the step two severity test "is not a difficult standard to meet and is intended merely to weed out de minimus claims").

The Commissioner defends the ALJ's non-severity finding by pointing to an assessment prepared by Dr. Ganesh, a consultative physician, who indicated that Plaintiff's lungs exhibited "normal" percussion with "[f]ew scattered rales bilaterally." (T at

9

471).  This defense is flawed in at least two respects.  First, the ALJ did not mention Dr. Ganesh's assessment in support of his non-severity finding, suggesting that the Commissioner is engaging in *post-hoc* rationalization.  See Grogan v. Barnhart, 399 F.3d 1257, 1263 (10th Cir.2005)(noting that court may not "create post-hoc rationalizations to explain the Commissioner's treatment of evidence when that treatment is not apparent from the Commissioner's decision itself"); see also Snell v. Apfel, 177 F.3d 128, 134 (2d Cir.1999) (quoting Burlington Truck Lines, Inc. v. United States, 371 U.S. 156, 168 (1962)); see also Melville v. Apfel, 198 F.3d 45, 52 (2d Cir.1999) ("Nor may [the Court] properly affirm an administrative action on grounds different from those considered by the agency") (citing SEC v. Chenery Corp., 332 U.S. 194, 196 (1947)).  Secondly, the fact that a consultative examiner noted certain lung sounds on one particular occasion is not remotely dispositive when considered with clinical notes and records indicating multiple hospitalizations and frequent shortness of breath.

### ii.    Depression

The ALJ determined that Plaintiff's depression was non-severe.  In support of this finding, he cited a treatment note from Dr. Picone, indicating that Plaintiff's depression was "well-stabilized."  In addition, Dr. Noia, a consultative psychiatric examiner, concluded that while the results of his exam were consistent with depression, the condition did not appear to be significant enough to interfere with claimant's ability to function on a daily basis. (T at 467).  Two State Agency review examiners reached similar conclusions. (T at 512, 571).

When evaluating the severity of mental impairments, the regulations require the ALJ to apply a "special technique" at the second and third steps of the review, in addition to the customary sequential analysis.  Kohler v. Astrue, 546 F.3d 260, 265-66 (2d Cir.2008)

(citing 20 C.F.R. § 404.1520a).

The technique first requires a determination of whether the Plaintiff has a medically determinable mental impairment. 20 C.F.R. § 404.1520a(b)(1). Then, the ALJ must rate the degree of Plaintiff's functional limitation resulting from the impairment in four areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. See 20 C.F.R. § 404.1520a(c)(3).

These areas are rated on a scale of "none, mild, moderate, marked, and extreme." 20 C.F.R. §§ 404.1520a(c)(4); 416 .920a(c)(4).  A mental impairment is generally found not severe if the degree of limitation in the first three areas is mild or better and there are no episodes of decompensation. § 404.1520a(d)(1). The ALJ must document "a specific finding as to the degree of limitation in each of the functional areas." 20 C.F.R. § 404.1520a(e)(2).

In this case, the ALJ did not mention the special technique or document a specific finding as to the degree of limitation in each of the functional areas.  Thus, there is a question as to whether the ALJ applied the correct legal standard.  In November 2003, Dr. Picone indicated that Plaintiff was experiencing "significant clinical depression" and prescribed medication to treat that condition. (T at 491).  As with the COPD finding, the ALJ selectively cites the record to support his assessment, pointing to a reference in one of Dr. Picone's notes to Plaintiff's depression being "well-stabilized," but then ignoring a note indicating "significant" depression.  See Gecevic v. Sec'y of Health and Human Services, 882 F.Supp. 278, 286 (E.D.N.Y.1995)(noting that the ALJ "cannot simply selectively choose evidence in the record that supports his conclusions").

Notes from Dr. Petrou, a treating psychiatric provider, indicated that Plaintiff

11

experienced anger outbursts and problems relating to family members. (T at 615, 619, 621). In August 2006, her Global Assessment Functioning ("GAF") score was assessed as 55, with her "highest" GAF score in the past year being a 60. (T at 622). These scores, which were not referenced in the ALJ's decision, indicate a moderate level of impairment. See Diagnostic and Statistical Manual of Mental Disorders, Text Revision 34 (4th ed.2000) (listing scores from 51 through 60 as indicating "moderate symptoms (*e.g.* flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (*e.g.*, no friends, conflicts with peers or co-workers)"); see also Kohler v. Astrue, 546 F.3d 260, 262 n.1 (2d Cir. 2008). Because the ALJ did not reference the special technique or make a specific finding as to each of the functional areas, it is not clear whether or how this evidence was considered.

### iii.    Combination of Impairments

Where a claimant alleges multiple impairments, the ALJ is required to consider "the combined effect of all [ ] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." 20 C.F.R. § 404.1523. No such consideration is apparent from the ALJ's decision.

For this reason, and for the reasons stated above, this Court recommends a remand for reconsideration of the evidence at step two of the sequential evaluation process. The Commissioner argues that any error by the ALJ at this step of the process was harmless because the ALJ considered all of Plaintiff's impairments throughout the remainder of the evaluation process. However, "[w]here there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a

claimant will be deprived of the right to have her disability determination made according to the correct legal principles." Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir.1987).

In this case, for the reasons stated above, this Court has substantial questions as to whether the ALJ applied too strict a standard at step two, whether the ALJ properly applied the special technique with regard to Plaintiff's depression, and whether the ALJ actually considered the combined effects of Plaintiff's impairments.  As such, a remand is recommended.

### b.    Treating Physician's Rule

Under the "treating physician's rule," the ALJ must give controlling weight to the treating physician's opinion when the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2); Halloran v. Barnhart, 362 F.3d 28, 31-32 (2d Cir. 2004); Shaw v. Chater, 221 F.3d 126, 134 (2d Cir.2000).[4]

Even if a treating physician's opinion is deemed not to be deserving of controlling weight, an ALJ may nonetheless give it "extra weight" under certain circumstances.  In this regard, the ALJ should consider the following factors when determining the proper weight to afford the treating physician's opinion if it is not entitled to controlling weight: (1) length of the treatment relationship and the frequency of examination, (2) nature and extent of the treatment relationship, (3) supportability of opinion, (4) consistency, (5) specialization of the treating physician, and (6) other factors that are brought to the attention of the court.

---

[4]"The 'treating physician's rule' is a series of regulations set forth by the Commissioner in 20 C.F.R. § 404.1527 detailing the weight to be accorded a treating physician's opinion." de Roman v. Barnhart, No.03-Civ.0075, 2003 WL 21511160, at *9 (S.D.N.Y. July 2, 2003).

C.F.R. § 404.1527(d)(1)-(6); see also de Roman, 2003 WL 21511160, at *9; Shaw, 221 F.3d at 134; Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir.1998); Schaal v. Apfel, 134 F.3d 496, 503 (2d Cir. 1998).

In this case, Dr. Piccone, Plaintiff's treating physician, completed a residual functional capacity questionnaire. (T at 609). However, the ALJ's analysis of Dr. Piccone's assessment is difficult to follow.

First, it is not clear that the ALJ was cognizant of his obligation to apply the treating physician's rule, as there is no specific discussion concerning whether Dr. Piccone's assessment was entitled to controlling weight.

Second, the ALJ appears to discount Dr. Piccone's assessment by characterizing it as "surprisingly drastic in terms of limitation, and unsupported by any explanatory clinical reporting." (T at 19). If this was the case, the ALJ was required to re-contact Dr. Piccone and there is no evidence that he ever attempted to do so. See Colegrove v. Comm'r of Soc. Sec., 399 F.Supp.2d 185, 196 (W.D.N.Y.2005)(noting that the ALJ has an "affirmative duty to develop the record and seek additional information from the treating physician, *sua sponte*, even if plaintiff is represented by counsel" to determine upon what information the treating source was basing his opinions); see also 20 C.F.R. §§ 404.1212(e)(1), 416.912(e) (1) ("We will seek additional evidence or clarification from your medical source when the report from your medical source ... does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques."); Taylor v. Astrue, No. CV-07-3469, 2008 WL 2437770, at *3 (E.D.N.Y. June 17, 2008) (finding it error for the ALJ to not re-contact Plaintiff's treating physician when he determined that the physician's opinion was "not well-supported by objective medical evidence").

14

Third, although he called Dr. Piccone's assessment into question, the ALJ's RFC determination is quite similar to many of the findings made by Dr. Piccone. Specifically, the ALJ found that Plaintiff had the RFC to lift/carry or push/pull 10 pounds occassionally, sit 6 hours in an 8-hour day (at least 2-3 hours at a time), and stand/walk 2 hours in an 8-hour day, but should not be involved with ladders, ropes, or crawling; and should only occasionally stoop, kneel, or crouch. (T at 19). Environmentally, the ALJ concluded that Plaintiff needed to avoid concentrated exposure to temperature extremes and moderate exposure to high humidity and fumes, dusts, odors, and gases. (T at 20). Mentally, the ALJ found that Plaintiff could understand, remember, and perform simple jobs under supervision and independently, make simple work-related decisions, attend to a schedule, and respond appropriately to supervision, co-workers, and work situations. (T at 20).

Dr. Piccone opined that Plaintiff could sit for about 6 hours in an 8-hour day, but could stand/walk for less than 2 hours. (T at 610). He indicated that Plaintiff would need to walk around for 3 minutes at a time every 10 minutes. (T at 610-11). According to Dr. Piccone, Plaintiff would sometimes need to take unscheduled breaks of 15-20 minutes every 2-3 hours; she could occasionally lift/carry up to 10 pounds, but never more than 20 pounds; she was likely to be absent from work about two days per month as a result of impairments or treatment; and needed to avoid all exposure to high humidity, fumes, dusts, odors, or gases. (T at 612). Likewise, Dr. Piccone indicated that Plaintiff needed to avoid even moderate exposure to extreme cold/heat, perfumes, cigarette smoke, solvents/cleaners, and chemicals. (T at 612).

It appears that the ALJ accepted some, but not all, of Dr. Piccone's findings. It is necessary to say "appears" because the ALJ did not explain which of the findings he was

accepting and which he was rejecting.  More importantly, given the fact that Dr. Piccone was Plaintiff's treating physician, the ALJ failed to give a sufficient explanation as to why Dr. Piccone's assessment was not afforded controlling weight.  The cryptic references to "surprisingly drastic" limitations and the alleged lack of "explanatory clinical reporting" are insufficient given the ALJ's well-established duty to re-contact.

This error renders the ALJ's overall assessment fatally flawed.  For example, the ALJ found that Plaintiff could perform her past relevant work as a child care worker.  However, he made no attempt to reconcile this finding with Dr. Piccone's assessment that Plaintiff could stand/walk for less than 2 hours in an 8-hour workday and should avoid moderate exposure to odors and cleaners.  The ALJ found Plaintiff could perform her past relevant work, which he concluded involved "primarily sedentary duties." (T at 22).  If Plaintiff could only stand/work for less than 2 hours, as assessed by Dr. Piccone, this could prevent her from even performing sedentary work.  At a minimum, before concluding that Plaintiff could perform sedentary work, the ALJ was obligated to address this finding, re-contact Dr. Piccone if necessary, and adequately explain why the finding was not entitled to controlling weight.  See Perez v. Chater, 77 F.3d 41, 46 (2d Cir.1996) ("Sedentary work also generally involves up to two hours of standing or walking and six hours of sitting in an eight-hour workday"); 20 C.F.R. § 404.1567.

Moreover, missing work approximately two days per month would also seem to seriously erode Plaintiff's occupational base.  The ALJ did not address this aspect of Dr. Piccone's assessment, let alone explain why it was not entitled to controlling weight or how, if it all, it impacted the RFC determination.  As such, this Court finds that a remand is necessary for reconsideration and re-evaluation of Dr. Piccone's testimony in light of the

concerns outlined above.

In addition, Dr. Piccone's limitations become less "surprisingly drastic" when Plaintiff's obesity is taken into consideration along with her other limitations.  Indeed, Dr. Piconne's consideration of obesity may very well explain the limitations the ALJ found "surprisingly drastic."  Plaintiff is morbidly obese.  She is 5' 6" tall and her weight ranged between 370 and 467 pounds. (T at 471, 641, 669).

Obesity was formerly an impairment set forth in the Listings.  However, it was removed from the Listings effective October 25, 1999. See Revised Medical Criteria for Determination of Disability, Endocrine System and Related Criteria, 64 Fed.Reg. 46122 (Aug. 24, 1999).

Nevertheless, the Regulations still provide for the consideration of obesity. Although "[o]besity is not in and of itself a disability; . . . [it] may be considered severe-and thus medically equal to a listed disability-if alone or in combination with another medically determinable ... impairment(s), it significantly limits an individual's physical or mental ability to do basic work activities." Cruz v. Barnhart, No. 04-CV-9011 (GWG), 2006 WL 1228581, at *10 (S.D.N.Y. May 8, 2006); see also SSR 02-1p; 20 C.F.R. Pt. 404, Subpt. P, App. 1, 1.00(Q) (instructing adjudicators to assess carefully the combined effects of obesity and musculoskeletal ailments during Steps 2 and 4 because "[o]besity is a medically determinable impairment that is often associated with disturbance of the musculoskeletal system ... The combined effects of obesity with musculoskeletal impairments can be greater than the effect of each ... considered separately.").

The ALJ briefly discussed Plaintiff's obesity as follows: "Morbid obesity continues, but not with any specific medical complications per se." (T at 19).   The ALJ also

17

discounted Dr. Piccone's statements concerning Plaintiff's obesity, granting the statements "limited weight" because they were "not fully supported as to assessment by associated clinical notes" and "not in any event consistent with other significant medical evidence of record." (T at 21-211).  This was plainly insufficient.  Even if Plaintiff's obesity did not impose any complications or limitations "per se," the ALJ was required to consider whether obesity, in combination with Plaintiff's other impairments, significantly limited her ability to perform work.  The ALJ did not specify which of Dr. Piccone's statements regarding obesity were entitled to "limited weight" or offer a sufficient explanation for failing to afford controlling weight to Plaintiff's treating physician.

The Social Security Administration has said that the ALJ is obligated to "explain how [he] reached [his] conclusions on whether obesity caused any physical or mental limitations." S.S.R. 02-1 p, 2000 WL 628049, at *7. This Court is mindful that some district courts, following the Seventh Circuit Court of Appeals, have declined to remand when an ALJ fails to explicitly address obesity, reasoning that obesity is indirectly considered if the ALJ adopts limitations suggested by examining doctors. See, e.g., Guadalupe v. Barnhart, No. 04-CV-7644, 2005 WL 2033380, at *6 (S.D.N.Y. Aug. 24,2005) (citing Skarbek v. Barnhart, 390 F.3d 500, 504 (7th Cir.2004)) (reasoning that the ALJ "relied on" medical evidence that made no mention that Plaintiff was obese even though it must have been apparent at the time of the assessment and thus the ALJ "sufficiently, if somewhat indirectly, accounted for Plaintiff's obesity"); Martin v. Astrue, No. 5:05-CV-72, 2008 WL 4186339, *3-4, 11-12 (N.D.N.Y. Sept. 9, 2008) (finding ALJ's failure to explicitly address Plaintiff's obesity harmless error, because the ALJ "utilized" the physical limitations from various doctors who considered Plaintiff's obesity).

Other courts have demanded that an ALJ clearly indicate he or she considered obesity when assessing a claimant's limitations. See, e.g., Hogan v. Astrue, 491 F.Supp.2d 347, 355 (W.D.N.Y.2007) (finding error even though the ALJ found Plaintiff's obesity a severe impairment, because it was "unclear whether he considered plaintiff's obesity at steps four and five of the disability evaluation"); cf. Fox v. Astrue, No. 6:05-CV-1599, 2008 WL 828078, at *11 (N.D.N.Y. Mar.26, 2008) (finding that the ALJ sufficiently considered obesity where he discussed it in an "entire paragraph"); Cruz v. Barnhart, No. 04-CV-9011, 2006 WL 1228581, at *9-10 (S.D.N.Y. May 8, 2006) (reasoning that the ALJ sufficiently considered the Plaintiff's obesity when he mentioned obesity in his factual findings).

The ALJ's decision in this case does not satisfy either standard.  Other than the summary statements quoted above, the ALJ did not analyze the limiting effects of Plaintiff's obesity, either alone or in combination with her other impairments.  On remand, the ALJ should carefully consider the evidence concerning Plaintiff's obesity, assess the limitations imposed by that condition, either alone or in combination with other impairments, and provide a specific discussion of this issue as contemplated by SSR 02-01p.

### c.    Past Relevant Work

The Regulations define "past relevant work" as work performed within the preceding fifteen (15) years, performed long enough for the claimant to have learned how to do it, and which work constituted substantial gainful activity. 20 C.F.R. § 416.965; see also Melville v. Apfel, 198 F.3d 45 (2d Cir.1998).  The ALJ concluded that Plaintiff could perform her past relevant work as a child care worker and clerical worker. (T at 22).

Plaintiff notes that her employment as a "child care worker" was actually a part-time job babysitting for a neighbor, which did not generate sufficient earnings to be considered substantial gainful activity. (T at 743).   The ALJ did not address this issue and the Commissioner makes no attempt to respond to Plaintiff's argument or defend the ALJ's decision in this regard.   The Commissioner simply argues that the ALJ was correct in his assessment that Plaintiff could perform her past relevant work as a clerical worker.

In any event, the ALJ's entire past relevant work analysis is clearly insufficient. "Pursuant to both case law and [SSR] 82-62, in order to determine at step four whether a claimant is able to perform her past work, the ALJ must make a specific and substantial inquiry into the relevant physical and mental demands associated with the claimant's past work, and compare these demands to the claimant's residual capabilities." Kerulo v. Apfel, 1999 WL 813350, at *8 (S.D.N.Y. Oct.7, 1999) (citations omitted).

An ALJ may rely on the claimant's statements, which "are generally sufficient for determining the skill level; exertional demands and nonexertional demands of such work." SSR 82-62; see e.g., Johnson v. Astrue, 2009 WL 890669, at 10-11 (finding the ALJ's assessment of the Plaintiff's ability to do her past work proper because the ALJ relied on the Plaintiff's description of the relevant work demands of her past work).

"Adequate documentation" will include "information about those work demands which have a bearing on the medically established limitations." SSR 82-62.   Thus, when a claimant has limitations due to a mental or emotional impairment, "care must be taken to obtain a precise description of the particular job duties which are likely to produce tension and anxiety, e.g., speed, precision, complexity of tasks, independent judgments, working with other people, etc., in order to determine if the claimant's mental impairment

is compatible with the performance of such work." SSR 82-62; see also Kerulo, 1999 WL 813350, at *9 (finding error where the ALJ found the Plaintiff's past relevant work did not involve "high levels of stress" but neither the testimony nor the documentary record provided evidence about the nature of her past work).

In this case, although the ALJ elicited some testimony from the Plaintiff regarding her past relevant work, he made no findings as to the mental demands of the past jobs. Rather, he simply noted that "[b]oth job types would involve primarily sedentary duties." (T at 22).  In his RFC determination, the ALJ limited Plaintiff to "simple" jobs and simple work-related decisions. (T at 20).  However, he made no finding as to whether these mental limitations were compatible with the performance of Plaintiff's past relevant work. This was error. See Steficek v. Barnhart, 462 F.Supp.2d 415, 421 (W.D.N.Y.2006) (remanding, in part, because the ALJ "made no findings as to the mental demands" of the Plaintiff's past work, despite finding the Plaintiff suffered from various mental and emotional impairments). Moreover, the conclusory reference to "primarily sedentary duties" does not constitute the sort of "specific and substantial inquiry" into the physical demands of the past relevant work, as required by the applicable regulations and case law.  On remand, detailed findings should be made as to both the physical and mental demands of the past relevant work and the ALJ should reconsider whether the part-time employment as a babysitter rose to the level of "substantial gainful activity."

### 3.     Remand

"Sentence four of Section 405 (g) provides district courts with the authority to affirm, reverse, or modify a decision of the Commissioner 'with or without remanding the case for a rehearing.'" Butts v. Barnhart, 388 F.3d 377, 385 (2d Cir. 2002) (quoting 42 U.S.C. § 405

(g)). Remand is "appropriate where, due to inconsistencies in the medical evidence and/or significant gaps in the record, further findings would . . . plainly help to assure the proper disposition of [a] claim." Kirkland v. Astrue, No. 06 CV 4861, 2008 WL 267429, at *8 (E.D.N.Y. Jan. 29, 2008).  Given the deficiencies in the record as outlined above, it is recommended that the case be remanded for further proceedings consistent with this Report and Recommendation.


## IV. CONCLUSION

For the foregoing reasons, it is respectfully recommended that the decision of the Commissioner be reversed, and that the case be remanded to the Commissioner pursuant to sentence four of 42 U.S.C. § 405 (g) for further administrative proceedings consistent with this Report and Recommendation.

Respectfully submitted,

Victor E. Bianchini
United States Magistrate Judge

Dated:   April 13, 2010
            Syracuse, New York


## V. ORDERS

Pursuant to 28 USC §636(b)(1), it is hereby ordered that this Report &

Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within ten(10) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as NDNY Local Rule 72.1(c).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material *which could have been, but were not*, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).SO ORDERED.

April 13, 2010

Victor E. Bianchini
United States Magistrate Judge

23